1

2

3

4

5

6

7

The Honorable Robert S. Lasnik

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10  CRYSTAL CONSERVATION COALITION,  )   No.  CV6-1770 RSL
                                    )
11                      Plaintiff,  )
                                    )   PLAINTIFF'S MOTION TO REOPEN
12      v.                          )   PROCEEDINGS AND TO SET
                                    )   SCHEDULING CONFERENCE
13  CRYSTAL MOUNTAIN, INC.,         )
                                    )
14                      Defendant.  )
                                    )
15  _____)

16      Defendant Crystal Mountain, Inc. ("CMI") has violated numerous requirements of the

17  Modified Consent Decree entered by this Court on January 27, 2013.  The violations include

18  missing the deadline to install crucial water quality protection infrastructure by over three years.

19  Proving the full extent of violations will require discovery and either summary judgment

20  proceedings or trial.  Plaintiff Crystal Conservation Coalition ("CCC") therefore moves the

21  Court to issue an order that reopens proceedings in the above-captioned matter and sets a

22  scheduling conference.  Once a scheduling conference date is set, the parties can confer and

23  develop a proposed schedule pursuant to Federal Rule of Civil Procedure 26(f).

PLAINTIFF'S MOTION TO REOPEN
PROCEEDINGS (CV6-1770-RSL)          1

BACKGROUND

Defendant CMI owns and operates Crystal Mountain Ski Resort, a major year-round resort located in Pierce County, Washington, west of Mount Rainier National Park, on land owned and managed by the United States Forest Service. Plaintiff CCC is a non-profit corporation organized under the laws of Washington State that is dedicated to monitoring the impacts of private development on public lands comprising and surrounding the Crystal Mountain Ski Resort and advocating for environmental protection of these lands and related natural resources.

The Crystal Mountain Ski Resort functions as a small municipality, with many seasonal residences on site in addition to restaurants, hotels, and parking lots. CMI generates significant wastewater and stormwater. CMI operates the resort under a Master Development Plan approved by the U.S. Forest Service. To comply with the requirements of the National Environmental Policy Act ("NEPA"), the Forest Service prepared a Final Environmental Impact Statement ("FEIS") analyzing the environmental impacts caused by the operation of Crystal Mountain Ski Resort. The FEIS sets forth extensive mitigation that CMI promised to carry out in order to reduce and offset the impact of operating a major recreational facility in an otherwise pristine area. CMI has failed to carry out much of the promised mitigation. Some of CMI's failures gave rise to violations of the Clean Water Act.

Starting in approximately 1998, CMI was aware that wastewater discharges from CMI-owned facilities in the Crystal Mountain Ski Resort base area were not being adequately treated prior to discharge into Silver Creek, which runs through and adjacent to the Crystal Mountain Ski Resort. On December 12, 2006, CCC sued CMI for violations of the Federal Clean Water Act relating to CMI's discharges of wastewater into Silver Creek. ECF No. 1. As a result of the

PLAINTIFF'S MOTION TO REOPEN
PROCEEDINGS (CV6-1770-RSL)          2

ZIONTZ CHESTNUT
2101 FOURTH AVENUE, SUITE 1230
SEATTLE, WASHINGTON 98121
TEL. (206) 448-1230; FAX (206) 448-0962

1   lawsuit, CMI and CCC entered into a Consent Decree, which this Court approved on February

2   20, 2007.  ECF No. 10.

3         The 2007 Consent Decree required CMI to design and build a "state of the art"

4   wastewater treatment plant ("WWTP") to treat discharges from CMI-owned facilities in the

5   Crystal Mountain Ski Resort base area by October 31, 2011, and required CMI to engage in

6   mitigation projects to improve water quality in Silver Creek.  CMI missed the relevant deadlines

7   by over a year, at which point the parties entered further negotiations.  The parties agreed to a

8   modified consent decree, which this Court entered on January 27, 2013.

9         The Modified Consent Decree, ECF No. 16, established new deadlines for installation of

10  a modified WWTP.  It also requires CMI to connect new and existing facilities to the WWTP (¶

11  9.c.), to conduct water quality monitoring in Silver Creek (¶ 9.d.), and to complete riparian

12  restoration projects (¶ 10.h.).

13        Most significantly for these proceedings, the Modified Consent Decree added detailed

14  requirements for the development of a robust stormwater management plan and construction of a

15  stormwater management system in parking lots associated with CMI facilities (¶ 10.f.).  A

16  stormwater management system helps to reduce and clean runoff from parking lots and

17  surrounding areas that drain into parking lots.  The Modified Consent Decree sets forth detailed

18  requirements for the stormwater management plan, and states that CCC may have an expert

19  review the plan and make recommendations (¶ 10.g.).  CMI's failure to adhere to the

20  recommendations creates a rebuttable presumption of non-compliance with the terms of the

21  Modified Consent Decree (¶ 10.g.).

22        CMI developed a draft stormwater management plan and CCC hired an expert to review.

23  The expert, Dr. Richard Horner, made several recommendations.  CMI never formally responded

PLAINTIFF'S MOTION TO REOPEN
PROCEEDINGS (CV6-1770-RSL)              3

ZIONTZ CHESTNUT
2101 FOURTH AVENUE, SUITE 1230
SEATTLE, WASHINGTON 98121
TEL. (206) 448-1230; FAX (206) 448-0962

1  to those recommendations or provided CCC with a final stormwater management plan. The

2  deadline for implementation of the final stormwater management plan was October 31, 2013 (¶

3  10.g.). It appears that CMI has implemented a stormwater system in a small fraction of the

4  areas where a stormwater system is required by the Modified Consent Decree.

5  The Modified Consent Decree also requires CMI to provide CCC with regular water

6  quality monitoring data and regular updates on the status of implementation of the stormwater

7  management plan (¶ 10.i.). CMI has repeatedly missed its deadlines to provide water quality

8  data, and has only provided such data after repeated reminders. In addition, CMI has failed to

9  provide CCC with the required updates on the status of implementation of the stormwater system

10  required by the Modified Consent Decree (¶ 10.i.1).

11  CMI has a long history of water quality compliance failures, extending beyond violation

12  of the Consent Decree and Modified Consent Decree. Permit reporting available at the

13  Department of Ecology's website indicates that from 1988 to 2017, Crystal Mountain has

14  violated wastewater permit requirements 281 times. *See* Declaration of Wyatt Golding, Exh. A.

15  CCC has repeatedly proactively engaged with CMI, through legal counsel, in efforts to

16  obtain compliance. CMI has repeatedly delayed and obfuscated, failing to provide basic

17  information about progress toward deadlines in the decree.

18  In the latest attempt to gain compliance with the decree, CCC wrote CMI a letter on

19  December 12, 2016 describing violations of the Modified Consent Decree, seeking water quality

20  monitoring data, and requesting an update on the status of the stormwater management system.

21  *See* Golding Decl., Exh. B. CCC informed CMI that it considered the letter to invoke "dispute

22  resolution," as referenced in the Modified Consent Decree. Counsel for CMI first responded on

23  December 23, 2016, requesting a delay of two weeks to provide information. Over the course of

PLAINTIFF'S MOTION TO REOPEN
PROCEEDINGS (CV6-1770-RSL)          4

ZIONTZ CHESTNUT
2101 FOURTH AVENUE, SUITE 1230
SEATTLE, WASHINGTON 98121
TEL. (206) 448-1230; FAX (206) 448-0962

1   the following two months, counsel for CCC repeatedly sought to obtain a full update on the

2   status of stormwater implementation.  Finally, on February 13, 2017, CMI provided the

3   requested information.  On March 17, 2017, CCC sent CMI a settlement offer and requested a

4   response by April 1, 2017.  *See* Golding Declaration, Exh. C.  CMI requested an extension to

5   April 7, 2017, and then offered to conduct further negotiations in two weeks' time but failed to

6   provide a counter-offer or other substantive response.

7        Over three years have passed since the Modified Consent Decree's deadline for CMI to

8   complete a stormwater system that conforms to the requirements of the Modified Consent

9   Decree.  Nearly four months after CCC's initial request for dispute resolution, violations of the

10  Modified Consent Decree are ongoing.  While CMI has offered to conduct further negotiations,

11  CCC has determined based on CMI's long history of non-compliance with the Clean Water Act,

12  State law, and court orders that such negotiations would only accomplish further delay.

13  Plaintiff's good faith attempts at dispute resolution have failed, and the only viable path forward

14  is reinitiation of proceedings.

15                              ARGUMENT

16       This Court retains jurisdiction to enforce the Modified Consent Decree (Modified

17  Consent Decree ¶ 12), and has "broad discretion to fashion equitable relief in order to enforce the

18  provisions of the consent decree, over which it retains jurisdiction . . . ."  *United States v. City*

19  *and County of San Francisco*, 699 F. Supp. 762, 766 (N.D. Cal. 1988).

20       Plaintiff seeks to reopen proceedings to enforce the Modified Consent Decree.  Plaintiff

21  has fulfilled the prerequisite for judicial enforcement set forth in the Decree—Plaintiff sought to

22  informally resolve disagreements with CMI in a series of letters and phone calls, and more than

23  two weeks has passed (Modified Consent Decree ¶ 12).

PLAINTIFF'S MOTION TO REOPEN
PROCEEDINGS (CV6-1770-RSL)              5

ZIONTZ CHESTNUT
2101 FOURTH AVENUE, SUITE 1230
SEATTLE, WASHINGTON 98121
TEL. (206) 448-1230; FAX (206) 448-0962

The case should proceed in a manner similar to a contract dispute. *See e.g., Nehmer v. United States Dep't of Veterans Affairs*, 494 F.3d 846, 860 (9th Cir. 2007) (citations omitted). As a general matter the enforcing party bears the burden of proof to demonstrate, by a preponderance of evidence, that a violation has occurred. Here, for some of the alleged violations Plaintiff bears the burden of proof. For other violations, the Modified Consent Decree creates a rebuttable presumption of a violation in certain factual circumstances and CMI will bear the burden to prove violations did not occur. To address the compliance issues in an orderly fashion, CCC believes that it is necessary for the Court to set a status conference and appropriate deadlines.

Federal Rule of Civil Procedure 16 provides the correct framework for implementing efficient proceedings. As described in Fed. R. Civ. P. 16(a) and 16(c), a scheduling conference would facilitate expedited disposition of a well-managed trial. Prior to a scheduling conference and issuance of a scheduling order, the parties must confer pursuant to Fed. R. Civ. P. 26(f). Once this Court sets a scheduling order, Plaintiff will commence discovery. Given that CMI has failed to implement entire portions of the required stormwater plan, it is likely that some or all of the dispute will be amenable to summary judgment based on responses to requests for admission and interrogatories.

Plaintiff initiated these proceedings in 2006, and over a decade later CMI has yet to fully comply with this Court's orders. Federal Rules of Civil Procedure 16 and 26 provide the correct means of enabling prompt and thorough resolution on CMI's ongoing non-compliance. Plaintiff respectfully requests that this Court reopen proceedings and set a scheduling conference.

## RELIEF REQUESTED

For the foregoing reasons, CCC respectfully asks the Court to:

PLAINTIFF'S MOTION TO REOPEN
PROCEEDINGS (CV6-1770-RSL)         6

ZIONTZ CHESTNUT
2101 FOURTH AVENUE, SUITE 1230
SEATTLE, WASHINGTON 98121
TEL. (206) 448-1230; FAX (206) 448-0962

1)     Order the parties to appear at a scheduling conference at the Court's soonest

available date;

2)     Order the parties to develop a discovery plan pursuant to Fed. R. of Civ. P. 26(f)

and to file that plan with this Court prior to the scheduling conference; and

3)     Notify the parties that following the completion of the scheduling conference, the

Court will issue a scheduling order as soon as practicable.


Respectfully submitted this ___12___ day of April, 2017.

ZIONTZ CHESTNUT

Joshua Osborne-Klein, WSBA No. 36736
Wyatt Golding, WSBA No. 44412
2101 Fourth Avenue, Suite 1230
Seattle, WA  98121
Telephone: (206) 448-1230
Fax: (206) 448-0962
joshok@ziontzchestnut.com
wgolding@ziontzchestnut.com

*Attorneys for Crystal Conservation Coalition*

PLAINTIFF'S MOTION TO REOPEN
PROCEEDINGS (CV6-1770-RSL)      7

ZIONTZ CHESTNUT
2101 FOURTH AVENUE, SUITE 1230
SEATTLE, WASHINGTON 98121
TEL. (206) 448-1230; FAX (206) 448-0962