1
2
3
4
5
6
7

U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10
11
12
13

CRYSTAL CONSERVATION
COALITION,

                            Plaintiff,

        v.

CRYSTAL MOUNTAIN, INC.,

                            Defendant

Case No. C06-1770RSL

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND AWARDING FEES

14
15
16
17
18
19
20
21
22
23

This matter comes before the Court on the parties' cross motions for summary

judgment. Dkt. # 29 and # 31.[1] When this case was originally filed in 2006, plaintiff, a

non-profit corporation whose members use and enjoy the lands and waters in the vicinity

of the Crystal Mountain Ski Resort, sought a declaration that defendant, the owner of the

resort, had violated the Clean Water Act. Eight days later, the parties submitted a joint

motion for entry of a negotiated consent decree in which defendant agreed to, among

other things, (a) apply for a National Pollutant Discharge Elimination System permit for

its wastewater treatment plant discharge, (b) complete specified projects related to Silver

---

[1] Defendant submitted a unified response to plaintiff's motion for summary and cross-motion,
but filed it twice at Dkt. # 31 and Dkt. # 32.

1  Creek and surface water runoff by October 31, 2010, and (c) develop and build a state-of-

2  the-art wastewater treatment facility by October 31, 2011. Dkt. # 10 at 4-7.

3          In June 2013, the parties were back before the Court. Plaintiff alleged that

4  defendant had failed to timely develop the wastewater treatment plant and complete one

5  of the projects specified in the consent decree. The parties negotiated a modified consent

6  decree ("MCD") which was approved and signed by the Court. Dkt. # 16. In the MCD,

7  plaintiff agreed to waive and release any claims that had been asserted in the underlying

8  complaint and any claims arising from the alleged breaches of the first consent decree. In

9  exchange, defendant agreed to, among other things, have a fully operational new waste

10  water treatment plant by August 31, 2013, retain an expert to design and engineer a

11  stormwater management plan for the resort that included specific features for each

12  parking area and a work road, and implement certain riparian restoration projects. A draft

13  stormwater management plan was to be submitted to plaintiff for review by July 15,

14  2013, and the plan was to be fully implemented by October 31, 2013, except for elements

15  to which plaintiff objected or if defendant gave timely, written notice of a force majeure

16  

17  event.[2]

18  

19  ────────────────────────

20  [2] Defendant was required to comply with the deadlines specified in the MCD, but a failure to do
    so would not constitute a breach or subject defendant to liability if an event outside of its control
    "that could not have been foreseen and cannot be overcome by the exercise of due diligence,

21  including but not limited to (i) acts of God, war, insurrection, or civil disturbance;
    (ii) earthquakes, landslides, floods; (iii) unforeseen geological conditions; (iv) changes in federal,
    state or local regulations; (v) decisions by or direction from a federal, state or local agency;

22  (vi) actions or inactions of third parties over which [defendant] has no control; (vii) adverse
    weather conditions or unusual delay in transportation, excluding conditions caused by reasonably
    foreseeable mountain weather events or poor cash flows due to lack of snow; (viii) restraint by

23  court order or order of public authority; (ix) strikes; and (x) any other litigation or arbitration or
    mediation that causes delay" occurred. Dkt. # 16 at 10. Financial difficulties and technical

On April 12, 2017, plaintiff moved to reopen the case, alleging violations of the MCD. Dkt. # 17. Plaintiff seeks a summary determination that defendant breached its agreement with plaintiff and the terms of the Court's order in five different ways, each of which is discussed below. Defendant offers various justifications for the violations and seeks a summary determination that plaintiff failed to comply with the MCD's dispute resolution procedures and is therefore not entitled to relief.[3]

### (1) Stormwater Infrastructure: failure to install required stormwater infrastructure in parking lots B, D, E, and F and on the work road to former Chair 1

In the MCD, defendant agreed to implement specific stormwater management features for each parking lot and a work road. In parking lot D, for example, defendant promised to "upgrade the existing collection swale to include two new catch basins and oil/water separators, and . . . upgrade the existing stormwater pond to an enhanced pond." Dkt. # 16 at 7. Neither of these requirements has been satisfied. Dkt. 30-5 at 9. Defendant also admits that it has failed to install required features in parking lots B, E, F, and along

---

infeasibility "shall not, in any event, serve as a basis for changes in this Decree or extensions of time under this Decree." Dkt. # 16 at 11.

[3] Defendant also points out that it has never been found to be in violation of the Clean Water Act and that plaintiff has not shown an adverse impact on water quality in Silver Creek. Neither fact is relevant to a determination of whether defendant has breached its agreement with plaintiff and/or violated an order of this Court. "[A] party seeking to enforce a consent decree does not need to show a continuing violation of federal law. To hold otherwise would completely eviscerate the central purpose of consent decrees, which is to enable parties to avoid the expense and risk of litigation while still obtaining the greater enforceability (compared to an ordinary settlement agreement) that a court judgment provides." Jeff D. v. Kempthorne, 365 F.3d 844, 852 (9th Cir. 2004).

the work road to former Chair 1 (separate and apart from the grass-lined collection swales discussed below). Dkt. # 30-5 at 7-11.

Defendant vaguely asserts that its continuing failure to implement the stormwater management features to which it agreed was caused by weather conditions in the summer of 2013. According to defendant, the high cloud cover precluded an aerial topographic survey of the project area and delayed the design and engineering of the stormwater management plan long enough that there was insufficient time remaining in the 2013 construction season to implement the project. Even if true,[4] the appropriate course of action would have been to give written notice of a force majeure event (if defendant believed it could support such a claim) and/or to request a modification of the explicit deadlines set forth in the MCD. Instead, defendant simply ignored a Court order and breached its negotiated agreement with plaintiff, exposing it to exactly the sort of claims asserted here. See Hook v. State of Ariz., 972 F.2d 1012, 1016-17 (9th Cir. 1992) (discussing methods by which a consent decree can be modified and disapproving the State's decision to ignore the district court's decree even where there was a strong argument in favor of modification).

In addition, the continuing delay from 2014 to 2017 cannot be justified under the terms of the MCD. Once it was clear that the stormwater management plan ("SWMP") would not be finalized, much less implemented, by October 2013, defendant developed a

---

[4]  The evidence suggests that it was defendant's choice to phase the project and delay for a year: the U.S. Forest Service representative simply approved defendant's plan to focus on the projects surrounding parking lots A and C. Dkt. # 35 at 5.

schedule for the completion of the project and a "final" plan was submitted to plaintiff for

review in January 2014.[5] Pursuant to the MCD:

> Within one week of receipt of the draft SWMP, [plaintiff and defendant] shall meet and confer regarding the draft SWMP. If [plaintiff] objects to any portion of the draft SWMP, [plaintiff and defendant] shall mutually select a stormwater expert, retained at [plaintiff's] expense, to review [plaintiff's] objection and [defendant's] responses to such objections, and to make recommendations to ensure that the final SWMP complies with the requirement of paragraph 10.f of this Decree. [Defendant's] failure to incorporate recommendations of the stormwater expert selected pursuant to this paragraph in its final SWMP shall create a rebuttable presumption that [defendant's] final SWMP violates this decree. [Defendant] shall fully implement the final SWMP no later than October 31, 2013, except that (1) [defendant] shall not be required to implement elements of the SWMP by October 31, 2013, that are subject to [plaintiff's] objections, and (2) [defendant] shall not be required to implement the SWMP by October 31, 2013, if a Force Majeure Event occurs, as defined in paragraph 11 of this Decree.

Dkt. # 16 at 8-9. By mid February 2014, plaintiff had raised objections to the plan –

primarily related to the size of the stormwater ponds compared to the size of the

catchment area and the lack of vegetative filtering – and hired an expert to provide

recommendations on how to address the perceived problems. Dkt. # 30-10 at 3-4; Dkt.

# 30-29 at 2-3. Defendant concluded that the recommended changes were not required by

the MCD. Dkt. # 30-30 at 2-4.

     Contrary to defendant's position, plaintiff's objection to the proposed SWMP did

not indefinitely stay implementation of the plan. First, an objection delays the

implementation deadline only for the design element that is the subject of the objection.

---

[5]  A couple weeks later, defendant notified the U.S. Forest Service that it would not be implementing the management features in parking lot F, despite the clear terms of the MCD, because it deemed the current system sufficient and intended to reduce the size of lot F in the future, at which point it would install an enhanced treatment train. Dkt. # 34 at 206.

Dkt. # 16 at 9. To the extent defendant has failed to implement elements of the SWMP

that have nothing to do with the stormwater pond designs and vegetation (such as the

project along the work road to former Chair 1), it has breached the MCD. Second, the

MCD provides that when an objection is raised, the parties must consult and, if a

mutually satisfactory resolution is not reached, a rebuttable presumption arises that the

plan violates the MCD. Plaintiff, with defendant's knowledge and consent, hired an

expert whose recommendations defendant rejected.[6] Thus, as of the spring of 2014,

defendant was free to move forward with the plan as proposed, the only caveat being that

it would have the burden of showing that the steps taken satisfied the MCD. It chose not

to do anything: portions of the plan remain incomplete, as defendant admitted during

discovery.

### (2) Swale Design: unilateral substitution of quarry spalls for the required grass-lined collection swales in parking lots B, C, F, and adjacent to the Silver Ski Condominiums

Defendant admits that it has not installed grass-lined collection swales in parking

lots B, C, F, and adjacent to the Silver Ski Condominiums. Dkt. # 30-5 at 7-8, 10. In its

discovery responses, defendant claimed that chipped stone would work better in the

swales associated with lots B, C, and the Condominiums and that grass-lined swales are

not practical in lot F. Id. In its memorandum, defendant reports that it chose to install a

combination of quarry spalls and wetland plants, such that the swales are "becoming

wetland basins and are recruiting wetland plants." Dkt. #31 at 16-17. Whatever the

---

[6]   This rejection was reiterated in February 2017 as the parties tried to resolve this dispute without court intervention. Dkt. # 37-2 at 2.

perceived benefits of defendant's unilateral decision to use rocks and/or wetland plants in place of grasses (or to forego a lining altogether), defendant ignored the clear and specific terms of the Court's order and breached its negotiated agreement with plaintiff.

**(3) Riparian Restoration Projects: failure to implement the riparian restoration projects in parking lot B and the former tennis courts**

Separate and apart from the obligation to design and implement a SWMP, defendant also agreed to "design and implement riparian restoration projects in Parking Lot B and the former tennis courts as depicted in Figure 2 of the 2004 Record of Decision for the Crystal Mountain Master Development Plan." In particular, defendant agreed to restore the entire portion of lot B designated for "proposed restoration" on Figure 2 and as much of the former tennis courts as is feasible, giving priority to the portion closest to Silver Creek. Dkt. # 16 at 9. No deadlines for the design or implementation of the restoration projects are set forth in the MCD. Defendant admits that it has not completed the restoration projects in parking lot B or the former tennis courts, but argues that, in the absence of an explicit deadline, the phased scheduling set forth in the 2004 Record of Decision ("ROD") governs, and plaintiff is unable to establish a breach. Dkt. # 30-5 at 12; Dkt. #31 at 18-19.

Under Washington law, if "a contract imposes a definite obligation but fails to provide a time for its performance," a reasonable time for performance will be implied. Byrne v. Ackerlund, 108 Wn.2d 445, 455 (1987). Determining a reasonable time generally turns on the intent of the parties as reflected in the language of their agreement. Id. Defendant correctly points out that, unlike other provisions of the MCD, paragraph

1   10.h. does not provide an explicit deadline by which the riparian restoration projects must

2   be completed. Its assumption that the open-ended development window set forth in the

3   2004 ROD governs is wholly unsupported, however. Defendant does not identify any

4   provision of the ROD or the underlying Final Environmental Impact Statement that

5   supplies the missing deadline for implementing the riparian restoration projects. The

6   ROD adopts an array of conceptual plans addressing watershed restoration, stormwater

7   management, road management, Silver Creek stabilization efforts, *etc.*, to guide the

8   development of the ski resort for the next ten to fifteen years, leaving it to defendant to

9   propose annual construction and restoration plans to the U.S. Forest Service. The timing

10  and details of the project are left entirely to defendant's discretion, a discretion which it

11  seeks to incorporate into the MCD simply because paragraph 10.h. mentions the ROD.

12

13      This interpretation is unreasonable. The reference to the ROD in paragraph 10.h. is

14  only for purposes of incorporating a map of the Crystal Mountain development showing

15  where the parking lot and tennis courts at issue are located. There is no indication in the

16  language of the MCD that the parties intended to incorporate other portions of the ROD.

17  The history of this litigation strongly suggests that the parties intended to strengthen and

18  expedite watershed restoration and protection projects, not *sub silentio* incorporate

19  environmental requirements to which defendant was already subject.

20      The question, then, is what did the parties intend as a reasonable time in which to

21  restore the riparian areas in parking lot B and the tennis courts. With the exception of a

22  requirement that defendant connect all of its facilities to the new wastewater treatment

23

plant, the parties agreed that the bulk of the activities would be completed in 2013. The only reasonable interpretation from the language of the MCD and the parties' conduct is that the parties intended that the riparian areas would be restored in a similar time frame. Defendant, in fact, cleared materials that had been stored on the tennis courts in anticipation of removing the pavement in the summer of 2013. The pavement was not removed, however, and in the intervening four years defendant chose to focus on other projects in the area. Dkt. # 30-6 at 6. Even if the Court assumes that the restoration of a riparian area would take longer than the construction of a stormwater pond or the installation of an oil/water separator, defendant has completely ignored this project for years. We are now well beyond any reasonable timeline for restoring these riparian areas.

**(4) Deadlines: failure to comply with the deadlines for submitting a draft stormwater management plan and implementing the plan**

Defendant admits that it did not submit a SWMP to plaintiff for review until September 2013, two months after it was due. Dkt. #30-5 at 6. It also admits that it has not fully implemented the plan, despite the MCD's October 2013 deadline. Id. These failures constitute violations of the Court's order and a breach of the parties' agreement. The fact that plaintiff was compelled to acknowledge the impossibility of implementing the SWMP by the deadline because defendant had not even settled on a design by that date does not constitute a waiver.

 **(5) Biannual Reports: failure to provide biannual reports regarding defendant's progress towards complying with the MCD, the results of the required water quality monitoring regimen, and the capacity of the new wastewater treatment plant at any given time**

Defendant admits that it did not provide any water quality or discharge monitoring reports to plaintiff in 2016. Defendant does not contest plaintiff's representation that no reports have been provided since the case was reopened. There is no disputed issue of fact regarding this breach.

The Court finds that defendant violated the MCD and breached its agreement with plaintiff as set forth above. Plaintiff seeks an order compelling defendant to install the stormwater features described in paragraphs 10.f.i. – 10.f.viii. and to complete the restoration projects described in paragraph 10.h. by October 31, 2018. Plaintiff also seeks a declaration that, if defendant again fails to meet the Court-ordered deadline, such failure will constitute contempt of Court and will subject defendant to fines as the Court deems appropriate. Finally, plaintiff requests an award of costs and attorney's fees. Defendant argues that plaintiff is not entitled to relief of any kind because it did not comply with the dispute resolution provision of the MCD, which states:

> In the event of any dispute regarding implementation of or compliance with the Decree, the parties shall first attempt to informally resolve the dispute through meetings between the parties. Any party may initiate dispute resolution by serving written notice of a request for dispute resolution. If no resolution is reached within fourteen days from the date that notice of the dispute is served, the party may resolve the dispute by filing motions with the Court.

Dkt. # 16 at 12.

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
AND AWARDING FEES

10

On December 12, 2016, plaintiff wrote a detailed letter to defendant, identifying multiple violations of the MCD and requesting informal dispute resolution under paragraph 12. Dkt. # 30-36 at 2-4. At that point, plaintiffs had not seen any water monitoring data for a year, and there had been very little communication regarding the status of the SWMP or its implementation. The parties exchanged letters, spoke on the telephone, and sent emails. Defendant declared that it was implementing the SWMP without addressing plaintiff's objections, that it had not implemented the riparian restoration projects described in paragraph 10.h. of the MCD, and that it had plans to complete some of the stormwater work related to parking lot B in 2017 but had not yet gotten around to scheduling stormwater work in lots D, E, and F. Dkt. # 37-2 at 2-3. Plaintiff made a written settlement offer in March 2017. Defendant called to request a face-to-face meeting, but plaintiff declined to negotiate against itself and requested a written counter-proposal on or before April 7, 2017, as a condition precedent to a meeting. On that day, defendant reiterated its request for a meeting – in writing this time – and promised that it would be prepared to substantively discuss plaintiff's objections and share its future plans when the parties met.  Plaintiff filed its motion to reopen five days later.

Plaintiff complied with the dispute resolution provision of the MCD. It notified defendant of a dispute, communicated on the phone and in writing with defendant regarding the perceived violations, was unable to obtain any assurance that defendant had or was in the process of complying with all of the terms of the MCD, and was unwilling

1   to accept defendant's repeated statements of progress and good intent. Whether measured

2   from the time plaintiff first sent its letter requesting dispute resolution or from

3   defendant's first response, months passed, and the parties were unable to resolve the

4   dispute. As has been made clear in this proceeding, many of plaintiff's concerns remain

5   unresolved, and plaintiff was entitled to seek judicial enforcement when the violations

6   were clear and defendant showed no interest in changing its behavior. To the extent

7   defendant is arguing that its belated written request for a meeting precluded plaintiff from

8   pursuing the dispute resolution process it had started months earlier, the argument is

9   rejected.

10          Having reviewed the record in this matter,[7] the Court finds that defendant has

11  knowingly and intentionally ignored its responsibilities under the MCD, prioritizing

12  operational projects and expenses over the obligations it voluntarily undertook when it

13  negotiated this settlement. It has unilaterally and repeatedly extended Court-ordered

14  deadlines, blithely stating as recently as 2017 that certain projects will be scheduled at

15  some unspecified point in the future. It has ignored or altered clear and explicit

16  provisions of the MCD, despite being bound by contract and Court order. Obtaining U.S.

17  Forest Service approval of a change in the scope or scheduling of a proposed project in

18  no way ameliorates the ongoing violations of the MCD.

19

20

21

22
23  ─────────────────────
    [7] The Court has reviewed defendant's "Motion for Declaration of Substantial Compliance,
    Clarification or Modification," filed on May 10, 2018. The motion does not change the analysis
    set forth in this Order.

For all of the foregoing reasons, plaintiff's motion for summary judgment (Dkt. # 29) is GRANTED and defendant's motion for summary judgment (Dkt. # 31) is DENIED. Defendant is, by contract and Court order, obligated to install the stormwater features described in paragraphs 10.f.i. – 10.f.viii. of the MCD and to complete the restoration projects described in paragraph 10.h. Defendant is reminded that it agreed to these stormwater management and restoration projects, and that "changed financial circumstances, or technical infeasibility of complying with the Decree shall not, in any event, serve as a basis for changes in this Decree or extensions of time under this Decree." Dkt. # 16 at 11.

As discussed at oral argument, however, there may be good reasons to alter certain requirements, such as substituting a combination of quarry spalls and wetland plants for grass-lined collection swales in specific areas. The parties and their technical advisers shall, within thirty days of the date of this Order, meet on site to discuss defendant's proposed alterations to the MCD requirements. Defendant shall reimburse plaintiff for any fees and expenses charged by plaintiff's technical adviser for this meeting. The parties shall go through each subsection of paragraph 10.f. and paragraph 10.h. If defendant has made or intends to make any changes from what is proscribed, it shall specify and justify the alteration. To the extent plaintiff accepts the proposed changes, the parties shall file a joint stipulation and proposed order altering the MCD. To the extent plaintiff rejects the proposed changes, defendant remains bound by the original terms of the MCD unless and until it obtains a modification from the Court.

In June 2013, defendant agreed to complete all of the projects specified in the MCD in a single construction season. In the context of this dispute, defendant has represented that the new waste water treatment plant is operational, the SWMP plan is nearing completion, and significant work has been performed to control stormwater run-off at the resort. Given the progress made, it is not unreasonable to expect defendant to complete the promised projects in this, its fifth construction season since entering into the MCD. Defendant's vague assertion at oral argument that completing all projects in 2018 will cause problems with or for the Forest Service notwithstanding, defendant shall complete its obligations under the MCD by October 31, 2018. If defendant again fails to meet the Court-ordered deadline, it will be in contempt of Court and subject to daily penalties from November 1, 2018, until all violations are remedied.

The Court intends to be more active in this litigation going forward. Defendant shall, beginning ninety days from the date of this Order, file quarterly status reports regarding its MCD-related activities during the preceding three months and its projected MCD-related activities during the next three months. The parties shall use these reports to gage compliance with the MCD and may, within fourteen days of the filing of the quarterly status report, file a motion to enforce or to modify the MCD with regards to the activities discussed in the report. This reporting requirement is in addition to the biannual reporting requirement set forth in the MCD.

Plaintiff is entitled to the reasonable costs expended in reopening this case and enforcing the MCD, including reasonable attorney's fees through the on-site meeting

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
AND AWARDING FEES

14

1   with defendant and its technical adviser. Plaintiff shall submit a statement of such costs

2   within 45 days of the date of this Order, noted for consideration on the second Friday

3   thereafter.

4

5           Dated this 29th day of May, 2018.

6

7                                                   _MRS Lasnik_____

8                                                   Robert S. Lasnik
                                                    United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
AND AWARDING FEES